# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF MICHIGAN

COTY LEWIS, both individually and on behalf of a class of similarly situated persons,
    Plaintiff

v.

ACUITY REAL ESTATE SERVICES, LLC d/b/a effectiveagents.com, a Florida limited liability company, and KEVIN STUTEVILLE, individually,
    Defendants
    /

Case No. 21-cv-12319

**CLASS ACTION**

Counsel of Record:

GRONDA, PLC
MATTHEW E. GRONDA (P73693)
Attorney for Plaintiff and Putative Class
PO Box 70
St. Charles, MI 48655
989-249-0350
matt@matthewgronda.com

## COMPLAINT

Coty Lewis, both individually and on behalf of a class of similarly situated individuals, brings the following complaint against Acuity Real Estate Services d/b/a effectiveagents.com and Kevin Stuteville.

## PARTIES

1) Lewis is a licensed real estate agent with a primary place of business in Saginaw County, Michigan.

2) Acuity is a Florida limited liability company regularly conducting business in the State of Michigan and within the territory comprising the Eastern District of Michigan.

3) Acuity's registered agent is Stuteville. His registered address is 970 Lake Carrillon Drive, Suite 300, St. Petersburg, Florida 33716.

4) Stuteville is a founder and the managing member of Acuity. He is principally responsible for its operations.

## JURISDICTION AND VENUE

5) This is a civil action brought against the defendants seeking monetary, declaratory, injunctive, and other relief for violations of the Lanham Act, 15 U.S.C. § 1051 seq.

6) This Court has jurisdiction under 28 U.S.C. § 1331, which authorizes federal court to decide cases involving federal questions, 28 U.S.C. § 2201, authorizing declaratory judgments, and 28 U.S.C. § 1367, authorizing resolution of related state law claims.

7) Venue is proper in the Eastern District of Michigan as a substantial part of the events or omissions giving ride to these claims occurred in with said District.

## GENERAL ALLEGATIONS

8) Like many other licensed professions, licensed real estate brokers directly refer their clients to other licensed brokers in exchange for a referral fee. Referral fees vary, but on average fees range from 10% to 30% of the receiving broker's fee. Generally, payment and receipt of such fees remains lawful and consistent with industry ethical standards.

9) The proliferation of the internet and the lucrative market in referral fees has recently given rise to a business model known as the "online real estate referral network."

10) An online real estate referral network generally operates through a website directed at consumers interested in purchasing or selling in a home. Acuity's website, www.effectiveagents.com, is very typical for the industry.

11) Acuity's website purports to have a proprietary algorithm that analyzes millions of real estate transactions and realtor reviews to provide consumers with the perfect realtor for their specific transaction.

12) The website further claims to have analyzed over 1.5 million realtors from which it "hand-picked" a small group of realtors who then further underwent a "rigorous approval process." These "top talent" realtors, it is claimed, will offer "unbiased advice" at "no cost" to the consumer.

13) The website promises to consumers that it has "better research" which will result in a pairing with "an exact, perfect fit" and "your own local expert" resulting in faster sales for more money.

14) All a consumer need do to get this "free" assistance is fill out an online form. For example, on September 1, 2021, a website visitor could express an interest in selling the Saginaw County Courthouse. The website indicates that it has "good news" as there are 389 local realtors who are interested in helping. The click progression is:





15) The goal, as can be seen, is for a consumer to input their contact information to the website.

16) Upon entry of contact information, Acuity does not – as it purports to do – conduct some meaningful mathematical analysis of the total 389 realtors it states conduct business in the local market.

17) Instead, Acuity primarily, or even only, refers consumers to real estate agents who have agreed to pay Acuity a percentage-based referral fee.

18) A recent transaction between Acuity and Lewis illustrates this business model and the harm it causes to Lewis, real estate agents, consumers, and the real estate market.

19) The brokerage company of which Lewis was a member of, Re/Max New Image, entered into a referral agreement with Acuity in 2019.

20) Through that agreement, Acuity, whom is a licensed real estate broker in the State of Florida, and not Michigan, set the terms upon which it would refer its clients interested in selling or purchasing a home.

21) The referral agreement was a blanket referral agreement not only covering all future referrals but all future transactions involving each referred client.

22) In the most material part, and as a condition of referral, Acuity required payment of 35% of the sales commission received by Lewis' brokerage in connection with any transaction closed for a referred client.

23) Acuity failed to disclose to Lewis or Lewis' brokerage that it does not actually have any "clients" insofar as that term is used to describe a broker-client relationship.

24) Defendant does not have a brokerage-client relationship with consumers visiting its website at all. It does not know them, has little to no communication with them, and has no responsibility to them. In short, it disclaims all of the fiduciary responsibilities associated with a broker-client relationship.

25) The preceding paragraph more fully explains Lewis' recent transaction with Acuity whereby Acuity referred a "client" to Lewis.

26) On October 2, 2019, Acuity electronically sent the following referral to Lewis:

| | |
|---|---|
| **Kevin Stuteville** | |
| Founder & Broker | |
| EffectiveAgents.com | |
| Name | Lillian Garrett |
| Type | Seller & Buyer |
| Date | 10/02/2019 11:44am |
| Add. | 214 W Harcourt Dr, Saginaw, MI 48609 |
| Value | $200,001 to $300,000 |
| OK to Text | Yes |
| Also Buying | Yes |

27) Acuity did not have any relationship, let alone a broker-client relationship, with Lillian Garrett. This information was simply inputted into the web form described above by a person on the internet. Note that there is not even any contact information.

28) Acuity lures unsuspecting consumers into inputting their information into its webform on false representation that it has specialized knowledge of their local market and the local real estate agents.

29) For example, it shows consumers where it purports to have agents placed in their local market. Saginaw, Michigan, for example:



30) But on deeper study, it's fraudulent and false. See Acuity's locally placed agents in Kalamazoo, Michigan, on the other side of the State of Michigan:



31) In fact, Lillian Garrett did not fill out the form at all. At the time, Ms. Garrett was 93 years old, infirm, and in a nursing home. She would pass away within the year.

32) The form was actually filled in by her son-in-law, Don Murphy, in his capacity as power of attorney. Mr. Murphy filled out a number of forms on similar websites at or around the same time.

33) By way of example, Lewis received this referral from a website that is a competitor of Acuity on the same day:



34) Acuity and many competitor real estate referral network websites are not referring clients of their brokerage. They are instead expert in rising to the top of search rankings and herding web traffic to their forms.

35) They then in turn exploit the custom and tradition of broker-broker referral fees, demanding payment of the same, despite not having what they purport to have: an actual broker-client relationship.

36) The business model is not only in violation of the Lanham Act as alleged below, it is also in direct violation of another federal law, specifically the Real Estate Settlement Procedures Act of 1974 (RESPA), 28 USC 2607. See also 12 CFR 1024.14.

37) Turning back to the example, Lewis contacted Mr. Murphy, commenced representation of him, and eventually sold the real estate that he sought the sale of.

38) Lewis paid a referral fee to Agent Pronto in connection with its referral of Mr. Murphy to Lewis.

39) Subsequently, Acuity also demanded payment of its full referral fee. Independently and not in concert, Acuity and its competitor demanded over 70% of the broker's fee.

40) Acuity then oppressively enforced a State of Florida venue provision in its contract, which included an attorney's fee provision, and obtained a judgment over 200% of the total brokerage fee. The litigation was led by Stuteville.

41) Acuity's deception is therefore two-fold. First, Acuity deceives consumers into inputting contact information into its webform on the representation that it is performing some sophisticated math analysis of all local realtors. Although it repeatedly tells consumers that its service is free to them, in reality they are paying Acuity 35% of their agent fee. Second, Acuity deceives real estate brokers and agents by representing that it has professional "clients" when it in fact has none. Instead, Acuity it is simply targeting local consumers on the internet and routing them back to local agents in exchange for a substantial share of professional fees.

42) Acuity's perversion of traditional broker-broker referral relationship is misrepresentative to consumers and real estate brokers and agents, anticompetitive, and places upward pressure on brokerage fees.

## CLASS ALLEGATIONS

43) Count I is brought by Lewis individually and on behalf of real estate agents, brokers, and professional who paid, or are liable for, payment of a referral fee to Acuity, within the applicable limitation period, for referral of any persons who desired to purchase and/or sell real estate.

44) Based on information and belief, the number of persons described by the proposed class is sufficiently numerous to make class action the

most practical method to secure redress for the claim advanced in this action.

45) Lewis' course of dealing with the defendants is typical of that of any real estate salesperson or broker receiving referrals from Acuity. In other words, Lewis' transactions with the defendants are substantially similar to transactions between other real estate salespersons or brokers and Acuity.

46) The predominate issue presented by this case is whether Acuity has violated, and is in violation of, Lanham Act, specifically 15 U.S.C. § 1125. Any individualized issues of law and fact are subordinate to this issue.

47) Lewis, as class representative, will fairly and adequately protect and advance the interests of the class and will vigorously prosecute this suit on their behalf.

48) Lewis' counsel is sufficiently experienced to represent Lewis and the class.

49) The maintenance of this action as a class will be superior to other available methods of adjudication in promoting the convenient administration of justice.

50) Individual cases would subject individual members of the class, and the defendants, to risk of varying and inconsistent adjudications.

51) This action is readily manageable as a class action. There is a discrete number of readily identifiable class members who, through their licensing, can be easily located for noticing.

52) Referral fees paid to any individual class member through the applicable statute of limitations will vary. They are, however, substantial enough to justify class action. As the facts specific to Lewis indicate, Acuity is taking 35% of real estate commission payable to him from the consumer. Aggregated across the United States and through the applicable limitation period, the total damages will justify this action.

53) At the same time, individualized claims are small enough that in most cases they will not justify the expenses and risk of individualized litigation.

54) The interest of individual class members to control prosecution of their own individual cases is not significant enough to overcome the efficiencies gained by class action.

**COUNT 1**
**FALSE ADVERTISING IN VIOLATION OF THE LANHAM ACT, 15 U.S.C. § 1125**

55) All previous paragraphs are incorporated into this claim as if fully restated word for word.

56) As detailed above, Acuity lures consumers into inputting contact information into its website through false and/or misleading statements of fact concerning its services. In sum, Acuity's false promise to consumers that it is finding them the "perfect" local real estate agent based on employment of a "sophisticated algorithm" is intended to provide the consumer assurance and certification that they will be receiving a referral "most likely to produce a favorable outcome."

57) Despite offering no real estate services or offering fiduciary duties inherent to a broker-client relationship, and in fact acting contrary to their consumer's interests, that said consumers input information into Acuity's website is evidence that its false and/or misleading statements are deceiving them. Acuity primarily, or even only, refers consumers to real estate agents who have agreed to pay Acuity a fee.

58) Acuity's false representations harm Lewis' business interests as a real estate agent in his local market.

59) Acuity then falsely represents to real estate agents and brokers that it has actual "clients" to refer and demand payment of a professional referral fee.

60) Acuity's false and/or misleading statements are actually deceiving, or tend to deceive, a substantial portion of not only consumer consumers but also real estate brokers and agents as Acuity represents that it has professional relationships with "clients" when it in fact does not.

61) Acuity's false and/or misleading statements are introduced into the interstate commerce through its website, effectiveagents.com.

62) Stuteville, as a founder and the managing member of Acuity, is personally involved in and directs the violative conduct of Acuity.

63) Lewis is directly and indirectly harmed by Acuity's false and/or misleading statements. Acuity's false advertising diverts potential business from Lewis. And even when that business diverts back to him through a referral, it comes with the attendant obligation to a pay a substantial referral fee based on a false representation that Acuity has a professional relationship with its "clients."

64) Lewis has suffered monetary damages as a result of Acuity and Stuteville's conduct.

## REQUEST FOR RELIEF

65) WHEREFORE, Lewis and the class members respectfully request that this Court:

    a. Enter an order certifying this case as a class action.

b. Enter an order finding that the defendants have violated the Lanham Act.

c. Enjoin the defendants from advertising in the manner complained of in this Complaint which are in violation of the Lanham Act.

d. Enter an award of money damages to Lewis and the class members who have suffered damages.

e. Award Lewis and class members attorney's fees and litigation costs.

f. Disgorge Acuity and Stuteville of their ill-gotten profits and turn them over to Lewis and the class members.

g. Award Lewis and class members any other relief that is necessary and just.

## JURY DEMAND

66) For all triable issues, a jury is hereby demanded.

Date: September 30, 2021

_Matthew E. Gronda_
MATTHEW E. GRONDA (P73693)
Attorney for Plaintiff and the Putative Class