UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

COTY LEWIS, individually and on behalf of
a class of similarly situated persons,

        Plaintiff,                         Case No. 1:21-cv-12319

v.                                           Honorable Thomas L. Ludington
                                                   United States District Judge
ACUITY REAL ESTATE SERVICES, LLC,
and KEVIN STUTEVILLE,

        Defendants.
_____/

**OPINION AND ORDER GRANTING DEFENDANTS' MOTION TO DISMISS**

Unlike many real-estate companies, Acuity Real Estate Services, LLC is primarily in the business of selling data. In exchange for a referral fee, Acuity refers users of its website, www.effectiveagents.com, to local real-estate agents who can help them buy and sell property. Because the referral fee is paid by the agent, the service is free to consumers.

In September 2021, a Saginaw-based real-estate agent, Coty Lewis, brought this action under the Lanham Act, 15 U.S.C. § 1051 *et seq.*, after Acuity successfully sued him for a 35% referral fee. He claims that by falsely advertising the superiority of its service, Acuity diverts consumers away from him and other agents.

Defendants, Acuity and its owner, Kevin Stuteville, have filed a motion to dismiss for failure to state a claim. They argue that Plaintiff has plausibly alleged neither standing under the Lanham Act nor all the elements of a false-advertising claim.

Because Plaintiff has not plausibly alleged a commercial injury flowing from Acuity's alleged false advertising, his Complaint will be dismissed.

I.

Acuity is a Florida-based company that operates one of many "online real estate referral network[s]."[1] ECF No. 1 at PageID.3. Offering the ability to find the "perfect" real-estate agent with a "sophisticated algorithm," Acuity's website invites users to enter their personal and contact information, which it then shares with local real-estate agents in exchange for a referral fee. *Id.* at PageID.4–6, 15. Because the referral fees are paid by real-estate agents, Acuity's website markets this service as free to consumers. *Id.* at PageID.12. According to Plaintiff, Acuity's website is "very typical for the industry." *Id.* at PageID.3.

In 2019, Plaintiff's brokerage, Re/Max New Image, entered into a referral agreement with Acuity, in which Acuity agreed to refer its users to Re/Max in exchange for a 35% referral fee. *Id.* at PageID.6–7. Later that year, Plaintiff received a referral for a prospective seller, 93-year-old Lillian Garrett, whose son-in-law had turned to Acuity to help sell her home. *Id.* at PageID.7–10. But Acuity was not the only referral network that Ms. Garrett's son-in-law had turned to. The same day that Plaintiff received Ms. Garrett's referral from Acuity, he also received Ms. Garrett's referral from one of Acuity's competitors, Agent Pronto. *Id.* at PageID.10.

After receiving the referrals, Plaintiff contacted Ms. Garret's son-in-law and successfully sold her home. *Id.* at PageID.11. Although both referral services demanded a fee, Plaintiff only paid Agent Pronto. *Id.* As a result, Acuity sued him for breach of contract, eventually obtaining judgment in its favor.[2] *Id.*

---

[1] The well-pleaded allegations in Plaintiff's complaint are assumed true for purposes of this Opinion. *See infra* Section II.

[2] Acuity claims that it prevailed against Plaintiff because he received Acuity's referral first and did not properly dispute the duplicative fee. *See* ECF No. 8 at PageID.39–41.

One month after losing the Acuity lawsuit,[3] Plaintiff filed this action on behalf of himself and a putative class of "real estate agents, brokers, and professional[s] who paid, or are liable for, payment of a referral fee to Acuity." *Id.* at PageID.12. Citing Acuity's claim of a "sophisticated algorithm," Plaintiff alleges that Acuity misrepresents the superiority of its service to divert consumers away from real-estate agents and into its referral network. *Id.* at PageID.15. Rather than "conduct[ing] some meaningful mathematical analysis," Plaintiff claims, Acuity's website merely "refers consumers to real estate agents who have agreed to pay [Acuity]." *Id.* at PageID.6.

Defendants have filed a motion to dismiss for failure to state a claim. ECF No. 8. First, they argue that Plaintiff cannot state a claim under the Lanham Act because he does not fall within the statute's "zone of interests," and because he has not plausibly alleged a connection between his alleged injury and Acuity's advertising. *Id.* at PageID.44–49. Second, they argue that Plaintiff has not plausibly alleged all the elements of a false-advertising claim because the statements at issue do not qualify as "commercial advertising." *Id.* at PageID.49–51. Plaintiff, for his part, denies each of these contentions. *See* ECF No. 11.

Having carefully reviewed the parties' briefing, this Court finds that a hearing is unnecessary and will address Defendants' Motion on the papers. *See* E.D. Mich. LR 7.1(f)(2).

## II.

Under Federal Rule of Civil Procedure 12(b)(6), a complaint fails to state a claim if it does not contain allegations that support recovery under any cognizable theory.[4] *Ashcroft v. Iqbal*, 556

---

[3] "Federal courts may take judicial notice of proceedings in other courts of record." *Rodic v. Thistledown Racing Club, Inc.*, 615 F.2d 736, 738 (6th Cir. 1980) (quoting *Granader v. Pub. Bank*, 417 F.2d 75, 82 (6th Cir. 1969)).

[4] Despite relying on Rule 12(b)(6), Defendants suggest that Plaintiff's complaint could also be reviewed under Rule 9(b), which requires a party "alleging fraud or mistake" to "state with particularity the circumstances constituting fraud or mistake." ECF No. 8 at PageID.51 n.4; FED. R. CIV. P. 9(b). Although the Sixth Circuit has yet to decide whether Rule 9(b)'s heightened

U.S. 662, 678 (2009). In reviewing a complaint under Rule 12(b)(6), the district court must construe the complaint in the nonmovant's favor and accepts the complaint's factual allegations as true. *See Lambert v. Hartman*, 517 F.3d 433, 439 (6th Cir. 2008). The plaintiff need not provide "detailed factual allegations" to survive dismissal, but the "obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In essence, the complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678–79 (quotations and citation omitted).

### III.

### A.

In every case involving a statutory cause of action, the threshold question is whether the plaintiff has statutory standing. *See Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 129 (2014). In contrast to "Article III standing," which refers to whether the "constitutional minimum" for jurisdiction exists, "statutory standing" refers to whether the plaintiff "falls within the class of plaintiffs whom Congress has authorized to sue under [the statute.]" *Id.* at 125, 128. In this sense, the existence of statutory standing presents nothing more than a "straightforward question of statutory interpretation." *Id.* at 129.

The statute at issue here is the Lanham Act, which provides:

---

pleading standard applies to Lanham Act claims, *see Williamson v. Rexam Beverage Can Co.*, 497 F. Supp. 2d 900, 909 (S.D. Ohio 2007), this Court has previously declined to apply Rule 9(b) to a claim for false advertising, *see Elcometer, Inc. v. TQC-USA, Inc.*, No. 12-CV-14628, 2013 WL 1433388, at *5 (E.D. Mich. Apr. 9, 2013). Here, the application of Rule 9(b) is immaterial because Plaintiff's complaint does not pass muster even under the more lenient Rule 12(b)(6) standard. *See infra* Section III.

> (1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which—
> > (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or
> > (B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities,
> 
> shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. § 1125(a).

In *Lexmark*, the Supreme Court articulated two general requirements for statutory standing: First, the plaintiff's interests must "fall within the zone of interests protected by the [statute]." *Lexmark*, 572 U.S. at 129. Second, the plaintiff must allege injuries "proximately caused by violations of the statute." *Id.* at 132. Applying these two requirements to the Lanham Act, the Supreme Court held that a false-advertising plaintiff must (1) "allege an injury to a commercial interest in reputation or sales" that (2) "flow[s] directly from the deception wrought by the defendant's advertising." *Id.* at 132–33.

Here, Plaintiff argues that he has standing under the Lanham Act because he "directly competes" with Acuity. ECF No. 11 at PageID.139 (noting that "no court, before or after *Lexmark*, has ever questioned the existence of standing when a plaintiff and defendant are in direct competition"). He also argues that he has standing because Acuity diverted business away from him. *Id.* at PageID.140–43. Neither argument is persuasive.

First, as Defendants note, the mere fact that both Plaintiff and Acuity seek out real-estate consumers does not make them direct competitors.[5] *See* ECF No. 12 at PageID.153. Plaintiff seeks them so that he can represent them; Acuity seeks them so that it can refer them to real-estate agents, like Plaintiff. Plaintiff's interests might be antagonistic to Acuity's insofar as he would prefer to find consumers on his own rather than pay a referral fee. But that is true of nearly every transaction in the customer-acquisition realm, as every rational business would prefer to obtain customers without additional cost or effort.

At the most basic level, Plaintiff is better understood as Acuity's customer than its competitor. *Cf. TrafficSchool.com, Inc. v. Edriver Inc.*, 653 F.3d 820, 825 (9th Cir. 2011) (finding that parties directly competed for referral revenue because "[s]ales gained by one [were] . . . likely to come at the other's expense"). And it is well settled that the Lanham Act does not protect the interests of customers "who [are] hoodwinked into purchasing a disappointing product." *Lexmark*, 572 U.S. at 132.

Second, Plaintiff has not plausibly alleged that Acuity is diverting business away from him. Besides a conclusory allegation at the end of his complaint, *see* ECF No. 1 at PageID.16 ("Acuity's false advertising diverts potential business from Lewis."), Plaintiff's only allegation of diversion involves Ms. Garrett's referral, *see id.* at PageID.8–11. His theory seems to be that he would have received Ms. Garrett's business without the obligation to pay a referral fee if not for Acuity's false advertising. *See* ECF No. 11 at PageID.141. But Plaintiff does not allege, much less *plausibly*

---

[5] Plaintiff's claim of direct competition is also procedurally improper because it appears for the first time in his response brief. *See Waskul v. Washtenaw Cnty. Cmty. Mental Health*, 979 F.3d 426, 440 (6th Cir. 2020) ("[Plaintiffs] cannot 'amend their complaint in an opposition brief or ask the court to consider new allegations (or evidence) not contained in the complaint.'" (quoting *Bates v. Green Farms Condo. Ass'n*, 958 F.3d 470, 483 (6th Cir. 2020))).

allege, that he would have learned about Ms. Garrett without the referrals. Nor does he allege that Acuity deceived Ms. Garrett's son-in-law.

Moreover, even if Plaintiff plausibly alleged a commercial injury, he has not plausibly alleged a connection between that injury and Acuity's advertising. *See Lexmark*, 572 U.S. at 133.

Plaintiff first asserts that Acuity deceives consumers into using its service by offering them the ability to find the "perfect" real-estate agent using a "sophisticated algorithm." ECF No. 1 at PageID.15. But those statements are mere puffery—that is, "exaggerated advertising, blustering, and boasting upon which no reasonable buyer would rely."[6] *Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1145 (9th Cir. 1997) (quoting 3 J. THOMAS MCCARTHY, MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION, § 27.04 (3rd ed. 1994)).

Words like "sophisticated" and "perfect" are ambiguous and unverifiable. *See Louisiana-Pac. Corp. v. James Hardie Bldg. Prods., Inc.*, 928 F.3d 514, 519 (6th Cir. 2019) (noting that puffery is "not a specific and measurable claim, capable of being proved false or of being reasonably interpreted as a statement of objective fact" (quoting *Coastal Abstract Serv., Inc. v. First Am. Title Ins.*, 173 F.3d 725, 731 (9th Cir. 1999))). Indeed, courts in the warranty context have found such words to be no more than commercial bluster. *See, e.g.*, *In re Seagate Tech. LLC Litig.*, 233 F. Supp. 3d 776, 793 (N.D. Cal. 2017) (claim that hard drive was produced using "the most sophisticated manufacturing process in the industry" was mere puffery); *Jones v. Lubrizol*

---

[6] Although Defendants do not raise the issue of puffery, they do argue that Acuity's alleged false advertising could not have caused Plaintiff's injury. *See* ECF No. 8 at PageID.48. Whether the statements on Acuity's website are puffery is material to whether they could have plausibly caused Plaintiff's injury. And courts often determine whether a statement is puffery at the pleading stage. *See Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv. Inc.*, 911 F.2d 242, 245 (9th Cir. 1990) (collecting cases); *see also Wysong Corp. v. APN, Inc.*, 889 F.3d 267, 270–72 (6th Cir. 2018) (affirming dismissal of false-advertising claim because plaintiff did not plausibly allege how photographs of lamb chops on dog-food packaging were more than mere puffery). Accordingly, this Court may consider the puffery issue in deciding Defendants' motion.

*Advanced Materials, Inc.*, No. 1:20-CV-00511, 2021 WL 4076837, at *16 (N.D. Ohio Sept. 8, 2021) ("Claims like 'world class,' 'quality,' and 'perfect' are not specific enough to create a warranty and amount to mere puffery.").

Similarly, the word "algorithm," defined as "a step-by-step procedure for solving a problem or accomplishing some end," broadly encompasses every computerized function. *See Algorithm*, MERRIAM-WEBSTER ONLINE DICTIONARY, https://www.merriam-webster.com/dictionary/algorithm [https://perma.cc/4NZE-9WSL].

Because no reasonable consumer would rely on these statements, *see Louisiana-Pac.*, 928 F.3d at 519, Plaintiff's inference that such statements diverted business from him is implausible, *cf. Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) ("[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" (quoting FED. R. CIV. P. 8(a)(2))).

Plaintiff also claims that Acuity lures consumers away from him by falsely stating that its service is "free" when, "in reality[,] [consumers] are paying Acuity 35% of their agent fee." ECF No. 1 at PageID.12. This allegation is confounding. By Plaintiff's own admission, the referral fee is paid by real-estate agents, not consumers. ECF No. 1 at PageID.6. To the extent that he means to claim that consumers are paying indirectly through increased transaction costs, he has not alleged as much in his complaint.

Finally, Plaintiff claims that Acuity deceives real-estate agents by telling them that it has "clients" despite lacking the traditional "broker-client relationship" with its users. ECF No. 1 at PageID.7, 15–16. But Acuity's representations to real-estate agents—the purchasers of its service—is not cognizable under the Lanham Act. *See Lexmark*, 572 U.S. at 132 ("Even a business misled by a supplier into purchasing an inferior product is, like consumers generally, not under the

Act's aegis."). And even if those representations were cognizable, Plaintiff does not allege that Acuity's use of the term "clients" damaged his business.

For these reasons, Plaintiff has not plausibly alleged a commercial injury flowing directly from Acuity's false advertising. *See id.* at 132–33. Therefore, his complaint will be dismissed.

**B.**

In addition to arguing that Plaintiff lacks standing under the Lanham Act, Defendants also argue that statements on Acuity's website do not qualify as "commercial advertising." ECF No. 8 at PageID.49. Although this argument is non-dispositive due to Plaintiff's lack of statutory standing, it will be addressed for purposes of completing the record.

To properly allege false advertising, a plaintiff must allege five elements:

> 1) the defendant has made false or misleading statements of fact concerning his own product or another's; 2) the statement actually or tends to deceive a substantial portion of the intended audience; 3) the statement is material in that it will likely influence the deceived consumer's purchasing decisions; 4) the advertisements were introduced into interstate commerce; and 5) there is some causal link between the challenged statements and harm to the plaintiff.

*Am. Council of Certified Podiatric Physicians & Surgeons v. Am. Bd. of Podiatric Surgery, Inc.*, 185 F.3d 606, 613 (6th Cir. 1999). In addition to these elements, plaintiffs must also allege that the challenged statements were made "in commercial advertising or promotion." *Grubbs v. Sheakley Grp., Inc.*, 807 F.3d 785, 798 (6th Cir. 2015) (quoting 15 U.S.C. § 1125(a)(1)(B)). The Sixth Circuit defines "commercial advertising or promotion" as:

> (1) commercial speech; (2) for the purpose of influencing customers to buy the defendant's goods or services; (3) that is disseminated either widely enough to the relevant purchasing public to constitute advertising or promotion within that industry or to a substantial portion of the plaintiff's or defendant's existing customer or client base.

*Id.* at 801.

Defendants argue that the statements on Acuity's website are not "commercial advertising" because they were not made "for the purpose of influencing customers to buy [Acuity's] goods or services." ECF No. 8 at PageID.49–50. Their reasoning is simple: Because Acuity's website users do not "purchase" anything, the statements on the website could not have been made for the "purpose of influencing" a purchase. *Id.* at PageID.50–51 (citing *Grubbs*, 807 F.3d at 801).

Defendants' argument relies on an unduly narrow reading of *Grubbs*. In *Grubbs*, the Sixth Circuit considered whether a company's email to 22 customers constituted "commercial advertising or promotion." *Grubbs*, 807 F.3d at 798. To help clarify that term, the *Grubbs* court provided the three-part definition recited above. *Id.* at 801. The *Grubbs* panel did not, however, state that its three-part definition would govern every case. On the contrary, in surveying the relevant case law, the *Grubbs* panel stated that "the touchstone of whether a defendant's actions may be considered 'commercial advertising or promotion' under the Lanham Act is that the contested representations are part of an organized campaign to penetrate the relevant market." *Id.* at 800 (quoting *Fashion Boutique of Short Hills, Inc. v. Fendi USA, Inc.*, 314 F.3d 48, 57 (2d Cir. 2002)).

Here, from the allegations in Plaintiff's complaint, one could plausibly infer that the statements on Acuity's website are part of an "organized campaign to penetrate the [real-estate referral] market." *See id.* at 800. As explained in Section III.A, *supra*, the statements on Acuity's website promote its service with terms like "perfect" and "sophisticated"—terms that one would expect to find in an advertising campaign. The mere fact that those statements are directed at real-estate consumers rather than real-estate agents does not change their commercial character. At bottom, those statements are designed to convince real-estate consumers to provide their contact information, which Acuity then leverages for referral fees.

In summary, the statements on Acuity's website may be plausibly considered "commercial advertising," because they are part of an "organized campaign." *See Grubbs*, 807 F.3d at 800.

**IV.**

Accordingly, it is **ORDERED** that Defendants' Motion to Dismiss, ECF No. 8, is **GRANTED**.

Further, it is **ORDERED** that Plaintiff's Complaint, ECF No. 1, is **DISMISSED**.

Dated: April 6, 2022                                  s/Thomas L. Ludington
                                                      THOMAS L. LUDINGTON
                                                      United States District Judge